Filed 8/17/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | S222227 |
| | ) | |
| v. | ) | Ct.App. 2/6 B249482 |
| | ) | |
| BRYAN M. PENNINGTON, | ) | Santa Barbara County |
| | ) | Super. Ct. No. 1423213 |
| Defendant and Appellant. | ) | |
| _____ | ) | |

Defendant was convicted of misdemeanor battery (Pen. Code, § 242)[1] of a person listed in section 243, subdivision (b), specifically a "peace officer" (*ibid.*). We granted review to decide whether the People proved the victim, a member of the City of Santa Barbara harbor patrol, was in fact a peace officer. Unlike most municipal police officers and deputy sheriffs, who are peace officers by virtue of their appointment and employment in that capacity (see § 830.1, subd. (a)), not all harbor patrol officers are peace officers. Instead, harbor patrol officers are peace officers only if their "primary duty . . . is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port or when performing necessary duties with respect to patrons, employees, and properties of the harbor or port." (§ 830.33, subd. (b).) Agreeing with *People v. Miller* (2008) 164 Cal.App.4th 653, 665–668 (*Miller*), we conclude the statutory language

---

[1] All further citations to statutes are to the Penal Code, except as noted.

SEE CONCURRING AND DISSENTING OPINION

defines a harbor patrol officer as a peace officer only if the particular officer's primary duty is law enforcement in either of two circumstances: when acting on or about the property or when performing necessary duties anywhere in the state. The Court of Appeal below declined to follow *Miller* and affirmed defendant's conviction, even though the People did not prove the harbor patrol officer whom defendant battered had the required primary duty of law enforcement. We therefore reverse defendant's conviction.[2]

## I. BACKGROUND

Given the narrow issue before us, the facts of the offense may be presented briefly. The case arose from an incident at a marina involving defendant Bryan M. Pennington and officers of the Santa Barbara harbor patrol, an agency of the City of Santa Barbara. Defendant, who possessed neither a keycard to the marina nor permission to enter, obtained access by grabbing a gate just before it closed and locked. A manager who recognized defendant called the harbor patrol to report the unauthorized entry.

Harbor patrol officers Richard Hubbard and Ryan Kelly responded to the call in a marked harbor patrol truck, wearing uniforms, badges, sidearms, Tasers, handcuffs, and other policing tools. The officers saw defendant near a storage box, holding a coiled hose over his shoulder. Officer Hubbard recognized defendant from a prior incident at the marina. Defendant walked towards the exit gate. Standing in defendant's path on a narrow finger of the dock, the officers asked him to stop and told him he could not leave with the hose. Defendant returned the hose to the storage box and walked back toward the exit, ignoring the

---

[2]     Our decision to reverse defendant's misdemeanor conviction for battery does not affect the order granting probation. Defendant's unchallenged felony conviction for resisting an executive officer (§ 69) provides an independent basis for that order.

officers. The officers told defendant they needed to speak with him and ordered him to stop, but he ignored the direction and attempted to force his way between them. Officer Hubbard placed his arm against defendant's chest to stop him. Defendant then stepped back, assumed a martial arts stance, forcefully kicked Officer Hubbard's upper thigh, kicked Officer Kelly's shin, and began to throw wild punches. After deploying their Tasers to no effect, the officers restrained defendant with handcuffs and took him into custody. During this time defendant directed a barrage of profanity at the officers, threatened to kill them, and said they had "better get some real cops down here." Following the protocol of the harbor patrol, which had no jail, the officers called the Santa Barbara Police Department to take defendant into custody.

Based on these facts the People charged defendant with resisting an executive officer (§ 69), battery on a listed person (§§ 242, 243, subd. (b) [peace officer]), trespass (§ 602, subd. (k)), and attempted petty theft (§§ 484, subd. (a), 664). The charge of battery related only to Officer Hubbard. Defendant represented himself with the assistance of advisory counsel. Trial was by jury.

Before trial, the People asked the court to rule that Santa Barbara harbor patrol officers were peace officers as a matter of law and to exclude any argument to the contrary. Defendant opposed the motion. He questioned whether harbor patrol officers were peace officers and stated he wished to examine Officer Hubbard about "his functions, his duties, how he came about to get that authority and how he's actually [administering] it." The court granted the People's motion, ruling "it's not something the jury can decide, that they're not peace officers. It's not an issue for them to decide." Two of the charged offenses required proof that defendant had acted against an officer who was engaged in "the performance of his or her dut[ies]." (§§ 69, 243, subd. (b).) For this reason, the court explained, defendant would be permitted to ask questions directed to the issue "whether the

3

officer was performing his lawful duty, not whether or not he was an officer." But the court continued: "[W]hen we get to the point of closing argument, you can't argue that . . . Officer . . . Hubbard and the other folks who work for the Harbor Patrol are not peace officers within the meaning of the law, because under the law they are designated as peace officers, as I understand it."

The court's pretrial ruling eliminated the People's burden to prove Officer Hubbard was one of the listed persons who may be the victim of a battery punishable under section 243, subdivision (b). To prove the other facts essential to that charge, including that defendant "kn[e]w or reasonably should [have] know[n]" Officer Hubbard was a peace officer "engaged in the performance of his . . . duties" (see § 243, subd. (b)), the People offered the testimony of Officers Hubbard and Kelly and also that of a harbor patrol supervisor, Officer McCullough.

Officer Hubbard testified he was "currently employed as a Harbor Patrol Officer, City of Santa Barbara," had held that position for 12 years, and was a "law enforcement peace officer" with the power to arrest. Officer Hubbard had attended a peace officer orientation course, which he believed gave him "peace officer status" under section 830.33, subdivision (b).[3] Officers Hubbard, Kelly and McCullough described the duties of harbor patrol officers. Officers were "trained in a number of duties" including "law enforcement officer, . . . boating safety officer, emergency medical technician, marine firefighter, and ocean lifeguard," any of which duties an officer might have to perform "at any time."

---

[3]     In fact, completion of a training course prescribed by the Commission on Peace Officer Standards and Training does not make one a peace officer. Rather, a "person described . . . as a peace officer" (§ 832, subd. (a)) in the Penal Code must complete such a course  before "the exercis[ing] of the powers of a peace officer" (§ 832, subd. (b)(1)).

4

Officers also received training in "arrest, search and seizure, [and] firearms . . . ." An officer's boating safety responsibilities "on an average day" involved "tow[ing] a bunch of boats broken down, nonemergency [and] emergency," and addressing problems related to "[m]arine mammals." Law enforcement duties typically concerned "things within the marina [and] the waterfront district." This involved "patrolling just like [the] P[olice] D[epartment] would patrol the city streets." Harbor patrol officers worked "under [the] umbrella" of the Santa Barbara Police Department, whose chief was their "supervisor" and also responsible for their training.

The People did not ask any witness whether Officer Hubbard's "primary duty," or that of any Santa Barbara harbor patrol officer, was "the enforcement of the law . . . ." (§ 830.33, subd. (b).)

Before counsel presented closing arguments to the jury, the court enforced its pretrial ruling by instructing the jury that "[a] sworn member of the Santa Barbara Harbor Patrol is a *peace officer*." The People likewise told the jury that "Officer Hubbard was a peace officer performing the duties of a Harbor Patrol officer[], that's element number one. That's clear." Defendant, having objected unsuccessfully to the pretrial ruling, obeyed it by offering no argument to the contrary. The jury after deliberation found defendant guilty on all counts. At the sentencing hearing, the court suspended imposition of judgment and placed defendant on probation for five years, conditioned on serving one year in county jail.

Defendant appealed. Relying on *Miller*, *supra*, 164 Cal.App.4th 653, defendant claimed the evidence introduced at trial was insufficient to prove Officer Hubbard was a peace officer because no evidence showed his primary duty was law enforcement. Defendant also contended the trial court erred by instructing the jury that members of the Santa Barbara harbor patrol were peace

5

officers as a matter of law and by excluding argument to the contrary. In response, the People contended *Miller* was wrongly decided, argued the evidence was sufficient to prove Officer Hubbard was a peace officer and, while acknowledging Officer Hubbard's status "was a question of fact that should have been submitted to the jury," urged that any errors in the court's pretrial rulings and jury instructions were harmless.

The Court of Appeal affirmed the verdict. Declining to follow *Miller*, *supra*, 164 Cal.App.4th 653, the Court of Appeal concluded a harbor patrol officer need not have the primary duty of law enforcement to be a peace officer. On this basis, the court found sufficient evidence to prove Officer Hubbard was a peace officer and held the trial court's errors in instructing the jury and restricting argument were harmless.

We granted defendant's petition for review and limited briefing and argument to the following issue: "Did the People prove that the named victim, a harbor patrol officer for the City of Santa Barbara Waterfront Department, is a peace officer within the meaning of Penal Code section 243, subdivision (b), supporting defendant's conviction for battery on a peace officer?" We answer the question negatively and reverse the Court of Appeal's decision.

## II. ANALYSIS

Defendant contends the evidence introduced at trial was insufficient to prove the person he battered was a "peace officer." (§ 243, subd. (b).) A simple battery, which is punishable by fine and/or imprisonment of up to six months, "is any willful and unlawful use of force or violence upon the person of another." (§ 242.) The maximum term of imprisonment increases to one year "[w]hen a battery is committed against" one of 14 categories of persons listed in section 243, subdivision (b), including "a peace officer . . . engaged in the performance of his or her duties . . . ." (*Ibid.*) For these purposes, " '[p]eace officer' means any

6

person defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2" of the Penal Code. (§ 243, subd. (f); see §§ 830–832.18 (hereafter chapter 4.5).)

To define "peace officer" for the purpose of statutes punishing crimes against peace officers is only one of the functions of chapter 4.5. Broader concerns related to governmental organization, and the distribution of power between state and local government, expressly motivated the Legislature to add the chapter to the Penal Code. "Prior to 1968, the designation of peace officers and the description of their powers were dispersed throughout the codes." (*County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879 (*County of Santa Clara*).) The resulting uncertainty led the Legislature to conclude "it was essential the law be clear with respect to 'who can act as peace officers, and where, and for what purposes' " and "to prohibit county [and other local] authorities from conferring that status on employees not designated in chapter 4.5." (*Ibid*.) By adopting chapter 4.5, the Legislature brought those scattered statutes together in one place and exclusively "define[d] peace officers, the extent of their jurisdiction, and the nature and scope of their authority, powers and duties." (Stats. 1968, ch. 1222, § 79, p. 2331 [uncodified provision].) Today, as a result of this legislation and "notwithstanding any other provision of law, no person other than those designated in this chapter [4.5] is a peace officer." (§ 830.) We have held "that the subject of who may exercise the powers of a peace officer is one of statewide concern" (*County of Santa Clara*, at pp. 878–879) and that local authorities exceed their powers by granting peace officer status except as authorized in chapter 4.5 (see *County of Santa Clara*, at p. 879).

Chapter 4.5 contains over 100 sections and subdivisions authorizing public agencies to confer the status and powers of a peace officer on the members of a host of state and local personnel categories, subject to an intricate array of conditions and limitations. (See §§ 830.1–830.4, 830.5–830.65, 830.75, 830.15;

7

see generally *County of Santa Clara*, *supra*, 3 Cal.4th at pp. 879–880; *Service Employees Internat. Union v. City of Redwood City* (1995) 32 Cal.App.4th 53, 60 (*Service Employees*).)  In this statutory scheme, only the Attorney General and special agents and investigators of the Department of Justice are defined as peace officers categorically, simply by reference to their office or job title and without further conditions.  (§ 830.1, subd. (b).)  Most deputy sheriffs and municipal police officers are peace officers so long as they are formally appointed to and actually employed in that capacity.  (§ 830.1, subd. (a); see *People v. Lara* (1994) 30 Cal.App.4th 658, 665–667.)  In contrast, the Legislature has defined the vast majority of peace officers by reference to their "primary duties" or "primary function," and has also imposed geographic, temporal, and other limitations on these officers' authority.  (See §§ 830.1, subd. (c), 830.2–830.38, 830.5, 830.75.)  Another dozen provisions permit agencies to confer a subset of the powers of peace officers, such as the power to arrest, write citations, serve warrants, and/or carry firearms, on designated personnel who are not peace officers.  (See §§ 830.7, 830.9, 830.11–830.14, 831–831.7.)  "The plain import of this statutory system is that the Legislature intended to grant peace officer status, and the powers and authority conferred with that status in particular instances, subject to carefully prescribed limitations and conditions."  (*Service Employees*, *supra*, at p. 60.)

A few examples will illustrate the detailed attention the Legislature has given to the conditions under which a person may properly be considered a peace officer.  The members of a fire department, other than members of an arson investigating unit, are peace officers only "if [their] primary duty . . . , when acting in that capacity, is the enforcement of laws relating to fire prevention or fire suppression" (§ 830.37, subd. (b)).  This language has been held to mean that "a person who does *not* have the primary duty of law enforcement cannot be a 'peace officer' under this statute."  (*Gauthier v. City of Red Bluff* (1995) 34 Cal.App.4th

8

1441, 1447 (*Gauthier*).) "If the Legislature had meant that all firefighters were to be peace officers it would have said so." (*Id.* at p. 1446.) Similarly, deputy sheriffs in 32 named counties, employed "to perform duties . . . relating to custodial assignments . . . [are] peace officer[s] . . . only while engaged in the performance of the duties of [their] respective employment and for the purpose of carrying out the primary function of employment relating to [their] custodial assignments . . . ." (§ 830.1, subd. (c).) Security officers of Hastings College of the Law "have [the] authority of peace officers only within the City and County of San Francisco." (§ 830.4, subd. (c).) And certain investigators employed by state regulatory agencies, for example the Department of Business Oversight and the State Board of Equalization, whose "primary duty" is the enforcement of the laws administered by those agencies, (§ 830.11, subd. (a)(1), (6)), "are not peace officers but may exercise the powers of arrest . . . and . . . to serve [search] warrants . . . during the course and within the scope of their employment, if they receive a course in the exercise of those powers" (*id.*, subd. (a)), but they "may not carry firearms" (*id.*, subd. (b)). (See *County of Santa Clara*, *supra*, 3 Cal.4th at p. 880.)

The People contend section 830.33, subdivision (b), defined Officer Hubbard as a peace officer. The statute, as relevant here, provides: "The following persons are peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest . . . . [¶] . . . . (b) Harbor or port police[4] regularly employed and paid in that capacity by a county, city, or district other than peace officers authorized under Section 830.1*, if*

---

**4**      Defendant notes the difference between the statutory term "[h]arbor or port *police*" (§ 830.33, subd. (b), italics added) and Officer Hubbard's job title, "harbor patrol officer." Defendant does not, however, argue the difference in nomenclature necessarily determines Officer Hubbard's status.

*the primary duty of the peace officer is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port or when performing necessary duties with respect to patrons, employees, and properties of the harbor or port.*" (§ 830.33, subd. (b), italics added.) A person's employment title does not determine his or her status as a peace officer under section 830.33. As the Attorney General has observed, "[h]arbor or port police regularly employed and paid as such are not necessarily peace officers." (68 Ops.Cal.Atty.Gen. 42, 45 (1985), interpreting former § 830.31, subd. (h) (Stats. 1984, ch. 211, § 1, p. 661), which is identical in relevant part to § 830.33, subd. (b).) Neither do the powers to issue citations and to arrest necessarily identify someone as a peace officer, because local governments by ordinance may authorize certain employees who are not peace officers, including marine safety personnel, to perform those acts. (See 68 Ops.Cal.Atty.Gen. at p. 45; § 836.5, subds. (a), (d); Harb. & Nav. Code, § 664.)[5] Rather, a harbor patrol officer is a peace officer only if he or she completely satisfies the applicable statutory requirements. (See 68 Ops.Cal.Atty.Gen. at p. 45, fn. 7.) Neither party disputes this. The question before us is what, exactly, section 830.33 requires.

The question has significance beyond the instant case and even the criminal law. Language identical to that which defines certain harbor patrol officers as peace officers (§ 830.33, subd. (b)) also appears in statutes governing police officers of the San Francisco Bay Area Rapid Transit District (BART), other

---

[5] A local governmental employee whose duties include law enforcement and who is authorized to issue citations may be a " '[c]ode enforcement officer' " (§ 243, subd. (f)(11)) — one of the 14 categories of persons who can be the victim of a battery punishable under section 243, subdivision (b). However, a person may not be both a peace officer and a code enforcement officer. (§ 243, subd. (f)(11).) No party has suggested the judgment against defendant may be affirmed on the ground that Officer Hubbard is a code enforcement officer.

10

harbor districts, transit agencies, airports, and railroads (§ 830.33, subds. (a), (c)–(e)), sergeants-at-arms of the Legislature, court marshals, bailiffs and service officers, coordinators of security for the judicial branch (§ 830.36, subds. (a)–(c)), and firefighter/security guards of the Military Department (§ 830.37, subd. (d)). Thus, the answer to the question before us may also inform the status of these officers and the authority of their agencies to designate, as peace officers, personnel who do not have the primary duty of law enforcement.

" 'Our fundamental task in construing' " section 830.33, as with any statute, " 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' . . . We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context.' " (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.) If the words appear susceptible of more than one reasonable construction, we look to other indicia of legislative intent, bearing in mind the admonition that "[t]he meaning of a statute may not be determined from a single word or sentence" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735) and that apparent "ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871). (See *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1393 (conc. opn. of Cuéllar, J.) ["[U]nderstanding whether [a statute's] meaning is plain is not a project well served by reading statutory provisions as isolated fragments."].)

Section 830.33 begins clearly. The statute's introductory paragraph plainly declares the Legislature's intent to define categories of peace officers who possess statewide authority to perform their primary duty: "The following persons are

11

peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest . . . ." (*Ibid*.) The ambiguity, if one exists, lies in subdivision (b)'s statement of the conditions on which any given harbor patrol officer's status as a peace officer depends: "*if the primary duty of the peace officer is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port or when performing necessary duties with respect to patrons, employees, and properties of the harbor or port*." (§ 830.33, subd. (b), italics added.)

Defendant contends the clause set out above in italics (beginning "if the primary duty of the peace officer" (§ 830.33, subd. (b)) means that a harbor patrol officer, to be a peace officer, must have the primary duty of law enforcement in two situations — the first defined geographically ("in or about the properties owned, operated, or administered by the harbor or port" (*ibid.*) and the second by activity ("when performing necessary duties with respect to patrons, employees, and properties of the harbor or port" (*ibid.*)). To read subdivision (b) in this manner appears to be necessary if the grant of statewide authority in section 830.33's introductory paragraph is to be meaningful. A harbor patrol officer does not need statewide authority when performing his duties "in or about" the harbor where he or she is employed. But an officer who must leave the immediate vicinity of the harbor to investigate a crime involving the "patrons, employees, [or] properties of the harbor" (*id.*, subd. (b)) or to make an arrest for such a crime (see § 830.33 [introductory par.]), does need statewide authority in order to function effectively.

The People read the statute differently. They argue a harbor patrol officer need not have the primary duty of law enforcement to be a peace officer. Instead, they contend, the statute sets out "alternative means for achieving peace officer status for a harbor patrol officer." Under the People's view, a harbor patrol officer

12

would be considered a peace officer under either of two conditions: "[1] if the primary duty of the peace officer is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port or [2] when [the officer is] performing necessary duties with respect to patrons, employees, and properties of the harbor or port." (§ 830.33, subd. (b).) "Under [the] final clause," the People contend, "a harbor police officer achieves peace officer status that is limited temporally to those times when he or she is performing necessary duties with respect to patrons, employees, and properties of the harbor or port," but "aside from the limited times in which [the officer] is performing [those] necessary duties . . . would not possess peace officer status or the attendant broader statewide authority conferred on a harbor police officer whose primary duty is law enforcement."

The People defend their interpretation of section 830.33 by invoking the "last antecedent" and "nearest reasonable referent" canons of statutory construction. (See generally *People v. Lewis* (2008) 43 Cal.4th 415, 492 [" ' "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' "].) By this the People mean the phrase — "if the primary duty of the peace officer is" — appears closer in the sentence to the immediately following phrase — "the enforcement of the law" — and must therefore modify only that phrase and not also the subsequent phrase — "when performing necessary duties . . . ." (§ 830.33, subd. (b).)

The People's fragmented interpretation of subdivision (b) is difficult to harmonize with section 830.33 as a whole. As noted, the statute's introductory paragraph plainly shows the Legislature intended to define a category of peace officers who possess statewide authority. Yet the People concede their interpretation of the statute would authorize agencies to appoint peace officers

13

who would not be able to function in this respect as the Legislature intended because they lack the primary duty of law enforcement on which the grant of statewide authority is expressly predicated. Certainly the Legislature may define peace officers who possess that status only when performing their assigned duties. Security officers of the Department of Justice, for example, are peace officers only "when performing assigned duties as security officers." (§ 830.4, subd. (b).) But section 830.33 does not speak in those terms. Instead, the statute defines peace officers who possess both statewide authority to enforce the law on behalf of their employing agencies (their primary duty), as well as other specified law enforcement powers that are unbound by time, place, or the needs of their employing agencies. For example, a person defined as a peace officer in section 830.33 has the statewide power to make arrests "as to *any public offense* with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of that offense . . . ." (*Ibid*., italics added.) In contrast, the "temporally limited" harbor patrol officer the People posit, who would be a peace officer only "when performing necessary duties with respect to patrons, employees, and properties of the harbor or port" (*id.*, subd. (b)), would not be able to exercise all of the powers the statute expressly grants. That the People's interpretation of section 830.33 creates these anomalies strongly suggests their interpretation is incorrect.

A further problem with the People's interpretation of section 830.33 is that it would seem to grant temporary peace officer status to any harbor patrol officer regardless of the nature of his or her duties. Were the People correct, officers whose only assigned duties were lifeguarding or operating rescue boats, for example, would arguably be peace officers whenever they were "performing [those] necessary duties . . . ." (§ 830.33, subd. (b).) All public employees presumably perform necessary duties throughout the workday. Yet to construe the

14

statute as making an agency's employees peace officers on that basis alone would render the Legislature's reference to the "primary duty" (*ibid.*) of law enforcement largely superfluous. Such an interpretation is to be avoided if at all possible. (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.)

The People suggest no reason why the Legislature might have wanted to confer the status and "formidable power" of a peace officer on public employees who have no necessary law enforcement duties. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 206; see *id.* at p. 216 [" 'police officers [exercise] the most awesome and dangerous power that a democratic state possesses with respect to its residents — the power to use deadly force to arrest and detain them' "].) Instead of attempting to justify their interpretation as serving an identifiable policy goal, the People attempt to avoid the logical consequences of their argument by arguing the term "police" (as in "[h]arbor or port police" (§ 830.33, subd. (b)), "necessarily connotes" that harbor patrol officers must have "law enforcement functions." But the statute does not lend itself to this interpretation. To read the "necessary duties" clause in isolation from the remainder of the statute, as the People urge us to do, severs that clause's grammatical connection to the only language in the statute expressly requiring a harbor patrol officer to have law enforcement duties. That language, of course, is the statement that a harbor patrol officer's "primary duty," if he or she is to be a peace officer, must be "the enforcement of the law . . . ." (*Ibid.*) One cannot have it both ways.

In conclusion, defendant's interpretation of section 830.33 harmonizes its various provisions. The People's interpretation does not. Instead, by treating the "necessary duties" clause (*id.*, subd. (b)) as an isolated fragment, the People's interpretation would create the anomaly of a peace officer supposedly appointed under section 830.33 who cannot exercise the statewide authority granted in that statute because he or she lacks the primary duty of law enforcement. The People's

15

interpretation would also create an anomaly within the broader statutory scheme set out in chapter 4.5, in which the Legislature has defined many categories of peace officers by reference to their primary duties (see *Service Employees*, *supra*, 32 Cal.App.4th at p. 60), presumably intending this requirement will be applied consistently (cf. *Gauthier*, *supra*, 34 Cal.App.4th at p. 1447 [holding "a person who does *not* have the primary duty of law enforcement cannot be a 'peace officer' " under a statute imposing that condition]).

The same question of statutory interpretation before us here also arose in *Miller*, *supra*, 164 Cal.App.4th 653. The defendant in that case, while driving unlawfully on a beach bicycle path and ignoring a pursuing " 'harbor patrolman,' " struck and injured a jogger. (*Id.* at pp. 656–659.) Based on these facts, the defendant was convicted of offenses including the attempt to elude a pursuing peace officer, causing serious bodily injury. (Veh. Code, § 2800.3, subd. (a); see *Miller*, at pp. 657, 660.) The statute under which the defendant was convicted, like the battery statute here at issue, defined "peace officer" by reference to chapter 4.5 of the Penal Code. (See Veh. Code, §§ 2800.1, subd. (a)(4), 2800.3, subd. (a).) The defendant challenged her conviction on the ground the record contained insufficient evidence to prove the person who had pursued her was a peace officer within the meaning of subdivision (b) of section 830.33. (*Miller*, at p. 665.) The Court of Appeal found insufficient evidence and reversed the conviction on that ground. (*Id.* at pp. 665–668.)

The court in *Miller*, *supra*, 164 Cal.App.4th 653, summarized the evidence concerning the alleged peace officer's status in this way: "On the day of the accident, Robert Hamilton was working at the lifeguard headquarters on East Ocean Boulevard in Long Beach. Hamilton worked for 'the City of Long Beach Fire Department' and 'the lifeguards.' He first stated his job title was 'rescue boat operator' and then corrected himself and said it was 'harbor patrolman.' In that

16

position, he 'work[ed] on the beach,' explaining that 'mostly, I'm a rescue boat operator.' He had the authority to issue citations, detain individuals and make arrests. On the day of the incident, Hamilton was wearing a long-sleeved white polo shirt with the fire department insignia and his name on it, red shorts and thongs." While pursing the defendant on the bicycle path, Hamilton drove a red truck with "Long Beach Fire Department rescue markings" and "equipped with a light bar on top and a siren." (*Id.* at p. 658.)

Considering this evidence, and observing "the prosecutor never asked Hamilton to specify his primary duties" (*Miller*, *supra*, 164 Cal.App.4th at p. 667), the Court of Appeal concluded the People had failed to prove he was a peace officer. "[S]ection 830.33, subdivision (b)," the court explained, "does not confer peace officer status on harbor or port police who engage in any 'policing functions' or who perform any duty that might also be performed by a peace officer. Rather, it confers peace officer status on those whose 'primary duty' is 'the enforcement of the law.' " (*Miller*, at p. 667.) "Hamilton," the court continued, "testified that he 'mostly' operated a rescue or patrol boat. From Hamilton's description of his duties, the jury could not conclude beyond a reasonable doubt that he was primarily engaged in the enforcement of the law." (*Ibid.*)

In reaching this conclusion, the court in *Miller*, *supra*, 164 Cal.App.4th 653, rejected the same interpretation of section 830.33 the People propose here, namely, that the statute defines a harbor patrol officer as a peace officer during whatever time he is "performing necessary duties with respect to . . . the harbor or port" (§ 830.33, subd. (b)) "without regard to whether [the officer's] primary duty is enforcement of the law" (*Miller*, at p. 667, fn. 9). "This definition," the *Miller* court reasoned, "would bestow peace officer status on a broad category of employees who perform no law enforcement functions, and cannot be reconciled

17

with prior decisions' strict interpretation of the provisions of chapter 4.5 . . . ." (*Ibid.*) For the reasons set out above, we agree with *Miller*: A harbor patrol officer must have the primary duty of law enforcement to be a peace officer under section 830.33, subdivision (b).

We thus turn to the question whether the People in the case before us proved Officer Hubbard's primary duty was law enforcement. The testimony concerning his status differs from the testimony concerning Hamilton, the alleged peace officer in *Miller*, *supra*, 164 Cal.App.4th 653. While both men performed various duties related to marine safety and law enforcement, Officer Hubbard had completed an orientation program required of peace officers, wore a badge and uniform, carried a sidearm and other policing tools, patrolled the waterfront as a police officer would, and reported for some purposes to the chief of the Santa Barbara Police Department. Officer Hubbard also claimed to be a peace officer under section 830.33, subdivision (b), but incorrectly based that legal conclusion on his having completed an orientation program. (See *ante*, at p. 4 & fn. 3.)

In the end, the one crucial similarity between this case and *Miller*, *supra*, 164 Cal.App.4th 653, is that, in both cases at trial the People offered no evidence to prove the alleged peace officer's "*primary* duty [was] the enforcement of the law . . . ." (§ 830.33, subd. (b), italics added.) On appeal the People have advanced the theory that, "while Officer Hubbard also had duties unrelated to law enforcement, the jury could reasonably infer that the most important purpose of his employment was enforcement of the law in the harbor." Assuming for the sake of argument the People's new theory reflects a valid definition of the statutory term "primary duty" (*ibid*.), the theory would not justify affirming the conviction. "Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury." (*McCormick v. United States* (1991) 500 U.S. 257, 270, fn.

8; see *Chiarella v. United States* (1980) 445 U.S. 222, 236 ["we cannot affirm a criminal conviction on the basis of a theory not presented to the jury"].)  In any event, one searches the record in vain for evidence supporting the People's theory. Indeed the People had no reason to offer evidence concerning Officer Hubbard's primary duty because the court's pretrial rulings had relieved them of any burden to prove the essential fact that he was a "peace officer" and, thus, one of the persons listed in section 243, subdivision (b).

By failing to prove Officer Hubbard was a peace officer, the People also "simply failed to close a sizable evidentiary gap mandated by the terms of the statute [defendant] allegedly violated."  (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 199 [People offered no evidence police car that defendant evaded displayed red lamp as required by statute defining offense].)  Viewing the evidence in the light most favorable to the prosecution, we cannot say any rational trier of fact could have found beyond a reasonable doubt this fact essential to defendant's conviction.  (See *People v. Banks* (2015) 61 Cal.4th 788, 804; *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.  See also *Burks v. United States* (1978) 437 U.S. 1, 18 [Double Jeopardy Clause precludes second trial once reviewing court has found evidence legally insufficient].)

### III. DISPOSITION

The judgment of the Court of Appeal is reversed to the extent it affirms defendant's conviction for battery under section 243, subdivision (b).  In all other respects, the judgment is affirmed.

**WERDEGAR, J.**

**WE CONCUR:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

**CONCURRING AND DISSENTING OPINION BY KRUGER, J.**

Like the majority, I understand Penal Code section 830.33 to mean that a harbor police officer is a "peace officer" under that section only if his or her "primary duty" is "enforcement of the law," and I would reverse the Court of Appeal's decision to the contrary. (Pen. Code, § 830.33, subd. (b) (section 830.33(b)).) Unlike the majority, however, I do not think we can decide that the trial evidence was insufficient to show that Officer Hubbard's "primary duty" was law enforcement unless we first decide what the term means. This is, admittedly, not an easy task — both because the parties have barely touched on the issue in their briefing, and because whatever we say about the issue in the context of this criminal battery prosecution under Penal Code section 243 would also likely have ramifications for many other statutes that incorporate the very same definition of "peace officer" for very different purposes. But I do not think we can avoid the task, as the majority does, by assuming for argument's sake that the People have correctly interpreted the term as referring to an officer's "most important" duty, and then professing inability to find record evidence to support the conclusion that Officer Hubbard's "most important" duty was law enforcement. (See maj. opn., *ante*, at p. 18.) The People's argument has its problems, but it is not clear to me that record support is one of them.

The meaning of section 830.33(b)'s "primary duty" requirement is a difficult threshold question that warrants more attention than the parties have

1

given it. Rather than attempt to decide the question here, I would remand to allow the Court of Appeal to consider the question in light of full briefing by the parties.

**I.**

To understand the difficulties the question poses, some background is in order. Defendant Bryan M. Pennington was found guilty of violating Penal Code section 243, subdivision (b) (section 243(b)), which provides for enhanced penalties for a person who commits battery against certain specified victims — a list that includes peace officers, custodial officers, firefighters, emergency medical technicians, and lifeguards, among others. Section 243 defines the term " '[p]eace officer' " by reference to the definition in "Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2." (Pen. Code, § 243, subd. (f)(1).) The portion of chapter 4.5 relevant here is section 830.33, which defines various categories of peace officers with statewide authority to perform their "primary duty," as well as to carry out arrests under certain circumstances. This definition includes, in pertinent part, "[h]arbor or port police regularly employed and paid in that capacity by a county, city, or district . . . if the primary duty of the peace officer is the enforcement of the law in or about the properties owned, operated, or administered by the harbor or port or when performing necessary duties with respect to patrons, employees, and properties of the harbor or port." (*Id.*, § 830.33(b).) The phrase "primary duty" is used throughout chapter 4.5 to define other categories of peace officers. (See, e.g., § 830.31, subds. (a), (b), (c)(1), (d); *id.*, § 830.32, subds. (a), (b); *id.*, § 830.33, subds. (a), (c), (d), (e)(1); *id.*, § 830.34, subds. (a), (b), (c), (d); *id.*, § 830.35, subds. (a), (b), (c); *id.*, § 830.36, subds. (a), (b), (c); *id.*, § 830.37, subds. (a), (b), (c), (d); *id.* § 830.38, subd. (a); see also maj. opn., *ante*, at pp. 7– 11.)

Section 830.33(b) is not a model of legislative drafting. What one Court of Appeal once said of a parallel provision concerning firefighters is equally true

2

here: "There are many problems with this statute. First and foremost is that it purports to define a peace officer but uses the term peace officer in the definition. Second, . . . the various clauses can be construed to relate to different antecedents." (*Gauthier v. City of Red Bluff* (1995) 34 Cal.App.4th 1441, 1445 (*Gauthier*) [discussing Pen. Code § 830.37].) I agree with the majority, however, that the better reading of section 830.33(b) is that a harbor police officer is a peace officer under that section only if the officer's "primary duty" is law enforcement. An officer with no law enforcement-related duties does not move in and out of "peace officer" status for purposes of section 830.33(b) — with the concomitant statewide authority to perform the "primary duty" and to make arrests for public offenses — depending on whether the officer is performing "necessary" duties such as lifeguarding or operating rescue boats. (Maj. opn., *ante*, at p. 14.)

But this conclusion raises a critical follow-on question: What does it mean to say that an officer's "primary duty" is (or is not) law enforcement, when, as in this case, the officer has a range of duties, some of which involve law enforcement and some of which do not? (See maj. opn., *ante*, at p. 18.) The statute speaks in terms of a single "primary duty," and not, for example, one of several "primary duties."[1] How is the officer's single "primary duty" to be identified? The People assert, without elaboration, that identifying an officer's "primary duty" means identifying the officer's "most important" duty. At oral argument, counsel for

---

[1]    Compare, for example, Penal Code section 186.22, subdivision (f), which defines " 'criminal street gang' " to include certain groups that, among other things, "hav[e] as one of [their] primary activities the commission of" certain criminal acts. We have interpreted that language to mean that the "occasional commission of those crimes by the group's members," as opposed to "*consistent*[] *and repeated*[]" commission of the enumerated crimes, will not render a particular group a criminal street gang. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323–324.)

3

defendant agreed.  This is indeed a standard definition of the word "primary," but the standard definition is not much help.  Is the importance — the primariness — of the officer's law enforcement duties to be measured by the amount of time the officer spends performing them?  By the qualitative significance of the officer's law enforcement functions?  Or by some other measure altogether?

As a general rule, when statutory language carries with it a range of possible meanings, we select among those meanings by considering how the language is designed to function in the context of the broader statutory scheme, as well as the purposes the statute is designed to achieve.  (E.g., *In re Derrick B.* (2006) 39 Cal.4th 535, 539; accord, e.g., *Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)  But when a statute adopted in one context is incorporated by reference into another, there is no single context or set of statutory purposes we can consult to illuminate the meaning of ambiguous statutory language.  As a consequence, consideration of context and purpose may do more to confound than to clarify.

This case provides a particularly stark illustration.  When chapter 4.5 was enacted in 1968, the Legislature specified that the purpose of the enactment was "to 'define peace officers, the extent of their jurisdiction, and the nature and scope of their authority, powers and duties,' not to change the status of peace officers for employment benefits."  (*Gauthier*, *supra*, 34 Cal.App.4th at p. 1444, quoting Stats. 1968, ch. 1222, § 79, p. 2331; see also *County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879; cf. maj. opn., *ante*, at pp. 11–16.)  Consistent with that purpose, the Legislature later added section 830.33(b) to the chapter. (See Stats. 1989, ch. 1165, § 26, p. 4505.)  But the Legislature has also deployed the "peace officer" definitions in that chapter — including section 830.33(b) — for a wide array of other purposes, including the conferral of employment rights and benefits.  (See, e.g., Lab. Code, § 4709 [scholarships for dependents of certain

4

peace officers]; Lab. Code, § 4850, subd. (b)(11) [disability payments for, among others, "[h]arbor or port police officers, wardens, or special officers of a harbor or port district or city or county harbor department under subdivision (a) of Section 830.1 or subdivision (b) of Section 830.33 of the Penal Code"]; Gov. Code, § 22820 [health benefits for families of certain peace officers]; see also, e.g., Gov. Code, § 3301 [Public Safety Officers Procedural Bill of Rights Act, applicable to "all peace officers specified in [Penal Code] Section[] . . . 830.33, except subdivision (e)"].)  And the Legislature has also, of course, incorporated the same definitions by reference in certain criminal statutes, including section 243 of the Penal Code.  (See Stats. 1980, ch. 1340, § 2.2, pp. 4718–4719; see also Pen. Code, § 243, subd. (f)(1); cf. *id.*, § 190.2, subd. (a)(7) [murder special circumstance applicable when "[t]he victim was a peace officer, as defined in" one of several sections of chapter 4.5]; *People v. Thomas* (2012) 53 Cal.4th 771, 817 [discussing special circumstance].)

What interpretation of the term "primary duty" might plausibly serve in all of these disparate criminal and civil contexts?  In criminal cases, the due process clause demands that the law provide the defendant " 'fair warning . . . of what the law intends to do if a certain line is passed.' " (*United States v. Lanier* (1997) 520 U.S. 259, 265, quoting *McBoyle v. United States* (1931) 283 U.S. 25, 27.)  A rule of construction specific to criminal cases, rooted in similar principles of fair notice, also sometimes requires us to give a narrow interpretation to ambiguous language defining a criminal offense or the penalties to which an offender will be subject.  (See, e.g., *People v. Avery* (2002) 27 Cal.4th 49, 58.)  Civil laws, by contrast, are often broadly construed in favor of a protective or remedial purpose. (See, e.g., *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312–314.)  And in civil cases, we often also give significant weight to an administrative agency's interpretation of a civil statute that the agency administers (*Yamaha*

5

*Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1), whereas we have no comparable practice in criminal cases.

Here, in this criminal battery case, we might be inclined to believe the Legislature intended a definition of "primary duty" that trains on observable characteristics. After all, how else is a defendant to know that the person he is battering is a "peace officer" for purposes of section 243(b), as the provision requires? Presumably the defendant will have no access to detailed job descriptions and no knowledge of how much time per week the officer spends patrolling the premises for law enforcement purposes, as opposed to, for example, engaging in marine safety activities. But for other purposes, a focus on observable characteristics might result in depriving officers of rights and benefits the Legislature intended them to enjoy. In short, given the many different purposes to which the very same statutory definition has been put, the meaning of its reference to an officer's "primary duty" is not readily apparent.

## II.

Although the parties in this case strenuously disagree whether the evidence was sufficient to support the conclusion that Officer Hubbard's "primary duty" was law enforcement, neither of them gives more than glancing attention to the question of what the term "primary duty" means. This is somewhat puzzling, since the question of what the statute means is, for obvious reasons, logically prior to the question whether the trial evidence was sufficient to support defendant's conviction under the statute. A court reviewing the sufficiency of the evidence asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, italics omitted; see also *Musacchio v. United States* (2016) ___ U.S. ___, ___–___ & fn. 2 [136 S.Ct. 709, 715–716 & fn. 2].) Before concluding that the People failed to prove an essential element of the crime by sufficient evidence, we

6

must, as a general rule, be able to say what it was, precisely, that the People were required to prove.

The majority avoids the problem by assuming, for the sake of argument, that the People are correct that "primary duty" simply means "most important" duty, and insisting that it has "search[ed] the record in vain" for trial evidence to support the People's argument that Officer Hubbard's "most important" duty was law enforcement. (Maj. opn., *ante*, at pp. 18–19.) The evidence on which the People rely is, however, neatly summarized in the preceding paragraph of the majority's opinion: "Officer Hubbard had completed an orientation program required of peace officers, wore a badge and uniform, carried a sidearm and other policing tools, patrolled the waterfront as a police officer would, and reported for some purposes to the chief of the Santa Barbara Police Department." (*Id.* at p. 18.) The majority does not explain why, in its view, no rational juror could decide on the basis of this evidence that Officer Hubbard's "most important" job responsibility was law enforcement, and its reasons for reaching that conclusion are not self-evident.

As an apparent aside, the majority also notes that we cannot affirm a conviction based on an interpretation of "primary duty" that was not presented to the jury. (Maj. opn., *ante*, at p. 18.) It is certainly true that "[a]ppellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury." (*McCormick v. United States* (1991) 500 U.S. 257, 270, fn. 8.) But it does not follow that this court must invalidate a conviction on the ground of insufficient evidence because the jury was not asked to apply the correct standard at trial, regardless of whether the trial evidence was, in fact, sufficient to meet that standard. Such an approach would not only foreclose any inquiry into whether the mistake might have been harmless (see *Maslenjak v. United States* (2017) ___ U.S. ___, ___ [137 S.Ct.

7

1918, 1931]; *Neder v. United States* (1999) 527 U.S. 1, 15–20), but would also, at least in most cases, preclude retrying a defendant before a properly instructed jury (see *Burks v. United States* (1978) 437 U.S. 1, 18 ["[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient."]; but cf. *U.S. v. Ford* (4th Cir. 2013) 703 F.3d 708, 710–711 [discussing effect of change in law on double jeopardy issue]). The law does not demand such a result. (See *McCormick*, *supra*, at p. 270 ["[E]ven assuming the Court of Appeals was correct on the law, the conviction should not have been affirmed on that basis but should have been set aside and a new trial ordered."].)

As I see it, the central problem with the People's "most important" duty interpretation is not that it lacks record support, but rather that it raises more questions than it answers. What does it mean to say that an officer's "most important" duty is law enforcement? How is the relative importance of the officer's various duties to be evaluated? And, critically, under what circumstances could we expect a defendant to know the nature of a harbor patrol officer's "primary duty," as section 243(b) requires? Without exploring the answers to these questions, I see no way to decide whether the trial evidence was sufficient to support defendant's conviction.

## III.

Given the limited attention the issue has received thus far, I would remand the case for further proceedings rather than attempt to construe the term "primary duty" in the first instance. (Cf. *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1118 [remanding for reconsideration in light of clarified legal principles]; *People v. Tom* (2014) 59 Cal.4th 1210, 1235–1237 [same]; *In re Cabrera* (2012) 55 Cal.4th 683, 692 [same]; *Zengen, Inc. v. Comerica Bank* (2007) 41 Cal.4th 239, 259 [same]; *In re Emiliano M.* (2003) 31 Cal.4th 510, 513 [same].) The Court of Appeal concluded that Officer Hubbard was a peace officer

8

under section 830.33(b), regardless of whether his "primary duty" was law enforcement, so long as he was engaged in "necessary duties" at the time of the battery. We hold today that was error. The error affected several aspects of the Court of Appeal's reasoning in affirming defendant's conviction, including the court's conclusion that an erroneous jury instruction was harmless. (See maj. opn., *ante*, at p. 6.) A remand would permit the Court of Appeal to reconsider its judgment in light of our holding. And it would further allow the parties to squarely address the follow-on interpretive question they have, until now, largely bypassed: How should the prosecution go about proving the nature of a harbor patrol officer's "primary duty"?

It is true that our order granting review described the question presented in the following terms: " 'Did the People prove that the named victim, a harbor patrol officer for the City of Santa Barbara Waterfront Department, is a peace officer within the meaning of Penal Code section 243, subdivision (b), supporting defendant's conviction for battery on a peace officer?' " (Maj. opn., *ante*, at p. 6.) This question, however, is essentially several questions wrapped into one, and there is no doubt that, "fairly included" within it (Cal. Rules of Court, rule 8.516, subds. (a)(1), (b)(2)), is the question whether section 830.33(b) requires that an officer's "primary duty" be "the enforcement of the law" (§ 830.33(b)). The majority implicitly agrees, as it decides precisely that question. We need not — and, I think, should not — decide anything more in the absence of full briefing and argument on the question of what "primary duty" means.

In any event, although the majority's decision puts an end to this particular case, the underlying interpretive question will undoubtedly recur. The Legislature

9

may wish to clarify the matter, in consideration of the many provisions that incorporate the same statutory definition for so many disparate statutory purposes.


                                                        **KRUGER, J.**

**I CONCUR:**

**CANTIL-SAKAUYE, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Pennington
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 229 Cal.App.4th 1376
**Rehearing Granted**

_____

**Opinion No.** S222227
**Date Filed:** August 17, 2017
_____

**Court:** Superior
**County:** Santa Barbara
**Judge:** Brian Hill

_____

**Counsel:**

Mark R. Feeser, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson, Michael R. Johnsen, Victoria B. Wilson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark R. Feeser
3940-7174 Broad Street
San Luis Obispo, CA  93401
(805) 542-0189

Theresa A. Patterson
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 620-6004