Filed 5/16/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| In re JAMES ROBINSON, JR., on Habeas Corpus. | B293216 (Los Angeles County Super. Ct. No PA007095.) |
|---|---|

ORIGINAL PROCEEDINGS on petition for writ of habeas corpus.  Superior Court of Los Angeles County, William C. Ryan, Judge.  Order to show cause discharged.

Eric R. Larson, under appointment by the Court of Appeal, for Petitioner and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James W. Bilderback II, Supervising Deputy Attorney General and Joseph P. Lee, Deputy Attorney General, for Respondent.

\* \* \* \* \* \*

In 2016, the California voters approved Proposition 66, the Death Penalty Reform and Savings Act of 2016. Among other things, Proposition 66 altered the procedures for collateral review of convictions resulting in a sentence of death. (Pen. Code, §§ 1509, 1509.1.)[1] This case presents a threshold question: Do Proposition 66's procedures for appealing the denial of a petition for a writ of habeas corpus from the superior court to the Court of Appeal apply to a petition originally filed with the Supreme Court prior to Proposition 66's enactment when the Supreme Court first referred part of the case to the superior court for fact finding and then, after Proposition 66's enactment, transferred the outstanding issues to the superior court "for adjudication"? We conclude that Proposition 66's procedures apply and that the Supreme Court invoked those procedures in transferring the outstanding issues to the superior court for adjudication. Accordingly, this appeal from the superior court's denial of the petition is jurisdictionally proper.

**FACTS AND PROCEDURAL BACKGROUND**

**I.    Facts and Direct Review of Conviction**

In 1993, a jury found James Robinson, Jr. (defendant) guilty of two counts of first degree murder (§ 187, subd. (a)) and one count of second degree robbery (§ 211). The jury also found true two special circumstances rendering defendant eligible for the death penalty—namely, that he committed multiple murders

---

1    All further statutory references are to the Penal Code unless otherwise indicated.

2

and did so in the course of a robbery.[2]  (§ 190.2, subds. (a)(3) & (a)(17).)  The first jury hung during the penalty phase, but a second jury empaneled to re-hear the penalty phase returned a sentence of death.  The California Supreme Court affirmed defendant's convictions and sentence (*People v. Robinson* (2005) 37 Cal.4th 592, 655) and the United States Supreme Court denied certiorari (*Robinson v. California*, 549 U.S. 953 (2006)).

## II.    Collateral Review

### A.    *Adjudication of Petition for Writ of Habeas Corpus*

In February 2006, defendant filed a "shell" or placeholder petition for a writ of habeas corpus with the California Supreme Court.  In October 2007, he filed an amended petition alleging 29 claims for relief.

In October 2014, the Supreme Court issued an order to show cause why habeas corpus relief should not be granted on three claims of juror misconduct.  Following the receipt of further briefing, the Court issued two orders—one in August 2015 and a second in September 2015—referring the four claims to Los Angeles Superior Court Judge William C. Ryan to conduct an evidentiary hearing and, thereafter, to issue a report and recommendation to the Supreme Court on how to resolve them.

The superior court held the evidentiary hearing over several days between September 2016 and May 2017.

---

[2]      The jury also found true the allegation that defendant personally used a firearm for all three crimes (§ 12022.5, subd.(a)), and the court imposed additional prison time for these enhancements.  However, they are of no moment to this appeal.

In September 2018, the superior court issued a 70-page written order concluding that none of defendant's claims of juror misconduct warranted relief.

**B.**   ***Proposition 66***

The voters enacted Proposition 66 on November 8, 2016. It became effective on October 25, 2017, when our Supreme Court's decision in *Briggs v. Brown* (2017) 3 Cal.5th 808 (*Briggs*) became final.

On February 14, 2018—that is, after the superior court concluded the evidentiary hearing but before it issued any ruling—the Supreme Court, "[o]n [its] own motion," issued an order (1) "vacat[ing]" the two prior orders referring the four juror misconduct claims to Judge Ryan, (2) "transfer[ring]" those misconduct claims "to the Superior Court . . . of Los Angeles" "for adjudication," and (3) "den[ying]" "[a]ll remaining claims in the petition . . . on the merits."

**C.**   ***Appeal***

Following the superior court's denial of relief on the three outstanding juror misconduct claims, defendant filed a timely notice of appeal "seek[ing] review of and appeal[ing]" the superior court's order "pursuant to . . . [section] 1509.1[]."

Through two orders, we solicited briefing from the parties on the questions of (1) whether the superior court's order is appealable under section 1509.1, and (2) whether the February 2018 transfer order was made pursuant to section 1509 or instead the Supreme Court's inherent authority.

## DISCUSSION

Proposition 66 changed the procedures for collateral review for persons sentenced to death in California. Prior to Proposition 66, defendants sentenced to death—so-called "capital

4

defendants"—filed their petitions for writs of habeas corpus directly with the Supreme Court (*Briggs*, *supra*, 3 Cal.5th at p. 824 ["Under current practice, habeas corpus proceedings are initiated in th[e Supreme Court]"; see generally Supreme Court Policies Regarding Cases Arising from Judgments of Death, Policy 3 (2001 ed.) [so designating]; e.g., *In re Hawthorne* (2005) 35 Cal.4th 40, 47.) Proposition 66 changed the law by declaring a new, "exclusive" procedure for capital defendants to use in adjudicating their habeas petitions—namely, they must file those petitions in the superior court that imposed their death sentence (§ 1509, subd. (a)), with a right to appeal any denial of relief to the Court of Appeal (§ 1509.1, subd. (a)), and thereafter to seek review before the Supreme Court (*Briggs*, at p. 825).

So which procedures apply to habeas petitions filed with the Supreme Court *before* Proposition 66, but which the Supreme Court has purported to "transfer" to the superior court for "adjudication" after Proposition 66? Answering this question turns on two subsidiary questions: (1) Does Proposition 66 itself allow for petitions filed before its enactment to be subject to its procedures, and, if so, (2) did the Supreme Court's February 2018 transfer order in this case invoke those procedures? We review both questions de novo. (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 234 [de novo review of statutes]; *People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76 [de novo review of court order].)

## I.     Does Proposition 66 Apply to Petitions Filed by Capital Defendants Prior To Its Enactment?

We conclude that Proposition 66's procedures can be applied to habeas petitions filed by capital defendants prior to the enactment of Proposition 66. We reach this conclusion for two reasons.

5

First, the plain language of Proposition 66 all but dictates this result. The provision authorizing appeals to this court, section 1509.1, applies by its terms to "the decision of a superior court on an initial petition under section 1509." (§ 1509.1, subd. (a).) Section 1509, in turn, says that it "applies to *any* petition for writ of habeas corpus filed by a person in custody pursuant to a judgment of death." (§ 1509, subd. (a), italics added.) We know that section 1509 reaches petitions filed *before* Proposition 66's enactment because the statute specifically contemplates what to do to pre-Proposition 66 petitions: "If a habeas corpus petition is pending on the effective date of this section, the court may transfer the petition to the court which imposed the sentence." (§ 1509, subd. (g).) Where, as here, the statute's plain text answers the question at issue, we need not—and, indeed, cannot—look any further. (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 419.)

Second, applying Proposition 66's procedures to pending petitions also accords with the Proposition's purpose. (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 755 [courts may "consider[] legislative history . . . where the text of a statute is clear . . . to confirm the interpretation already apparent from the plain language"]; *McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 256 [so noting].) Proposition 66 was enacted to "[r]eform the existing inefficient appeals process for death penalty cases," in part by removing the backlog of habeas petitions pending before the Supreme Court by redistributing those petitions to the pertinent superior courts around the state for orderly disposition. (Prop. 66, § 2, Finding 6.) This purpose is furthered by subjecting *all* pending petitions to the Proposition 66's new process, not just *some* of them.

Defendant resists this conclusion.  Specifically, he argues that section 1509.1 only provides a right to appeal to the Court of Appeal for "the decision of a superior court on an *initial petition* under section 1509."  (§ 1509.1, subd. (a), italics added.)  An "initial petition," defendant continues, means a petition filed originally in the superior court.  We reject this proffered construction of section 1509.1.  To begin, it would render superfluous the portions of section 1509 providing for the transfer of pending petitions to the superior court; after all, if Proposition 66 only applied to post-enactment petitions, there would be no *need* to transfer earlier filed petitions.  Our job is to give effect to all of a statute's provisions, not just some of them.  (*People v. Pennington* (2017) 3 Cal.5th 786, 797.)  Further, the phrase "initial petition" already has a well-established meaning separate and apart from its temporal relationship to the enactment of Proposition 66:  As Proposition 66 itself and pre-Proposition 66 case law both acknowledge, an "initial [habeas] petition" means the *first* petition filed by a capital defendant and exists in contradistinction to subsequent and "successive" petitions that are subjected to greater procedural hurdles than a defendant's "initial petition."  (§ 1509.1, subd. (c) [requiring certificate of appealability before capital defendant may appeal a "successive petition"]; *In re Reno* (2012) 55 Cal.4th 428, 456-458 [explaining differences between "initial" and "successive" petitions, and erecting greater procedural hurdles for successive petitions].)

Because the habeas petition before us is defendant's first, it is an "initial petition."  On that basis, it is statutorily subject to Proposition 66's transfer provisions.

## II. Did the Supreme Court Invoke Proposition 66's Procedures So As To Render Appeal To This Court Appropriate?

We conclude that the Supreme Court's February 2018 order invoked Proposition 66's transfer provisions and, in so doing, sent what was left of defendant's petition to the superior court for final adjudication (and, subsequently, for appeal to this court). As noted above, Proposition 66 grants the Supreme Court discretion whether to transfer pending habeas petitions to the superior court. (§ 1509, subd. (g) [noting that the court "may" transfer a pending petition]; see also *id.*, subd. (a) ["A petition filed in any court other than the court which imposed the sentence should be promptly transferred to that court unless good cause is shown for the petition to be heard by another court."].) This power to transfer the *entire* case ostensibly encompasses the lesser-power to transfer just a *portion* of the case. (Civ. Code, § 3536 ["The greater contains the less[er]."]; *Peatros v. Bank of America* NT & SA (2000) 22 Cal.4th 147, 177 [so noting].) Here, however, the plain text of the Supreme Court's February 2018 order vacated the prior referral order, denied all of the non-referred claims, and transferred the sole outstanding referred claims to the superior court "for adjudication." On its face, this divested the Supreme Court of any further connection with the petition.

Defendant also resists this conclusion. Specifically, he argues that the Supreme Court, in February 2018, merely transferred the case "[o]n [its] own motion" and did not explicitly reference Proposition 66 or section 1509. What matters, however, is what the February 2018 order *did*—not whether it used any magic words. And what it *did* was revoke the prior referral order and transfer the sole remaining claims in the petition to the

8

superior court for "adjudication"—and hence, resolution.  The Court reserved no further jurisdiction for itself, as it has done in other cases.  (*In re Zamudio Jimenez* (order to show cause issued March 21, 2018, S167100, VA036217)*; In re Hawthorne* (order to show cause issued May 16, 2018, S176951, BA137272)*; In re Butler* (order to show cause issued August 15, 2018*, S178123, NA019605*; In re Watson* (order to show cause issued December 12, 2018, S167108, A653246).)  Thus, while defendant is correct that the Supreme Court in other cases expressly cited Proposition 66 or section 1509 in its transfer orders, its failure to do so here is of no moment.

# DISPOSITION

The order to show cause is discharged.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ

10