Filed 4/17/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Western Manufactured Housing Communities Association et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> City of Santa Rosa et al., <br><br> Defendants and Respondents. | A172082 <br><br> (Sonoma County Super. Ct. No. SCV-268752) |

Plaintiffs Western Manufactured Housing Communities Association, a nonprofit organization that promotes the interests of owners, operators, and developers of manufactured home communities in California, and Rincon Valley Mobilehome Park (Rincon; collectively Western or plaintiffs) appeal a judgment entered in favor of defendants City of Santa Rosa, the Department of Housing and Community Services of the City of Santa Rosa, and Megan Basinger, as interim director of the named department (collectively the City) on plaintiffs' complaint for declaratory and injunctive relief and petition for writ of mandate.

Rincon owns and operates a 230-space mobilehome park in Santa Rosa. The case arises out of a wildfire state of emergency in Sonoma County that lasted for several years. Penal Code section 396 (section 396) prohibits an increase in the rental price of a mobilehome space of more than 10 percent during a declared state of emergency. (*Id.*, subd. (e).) For mobilehome spaces subject to a local rent control ordinance and already rented at the time of the

1

declaration, the statute defines "rental price" as "the amount authorized under the local rent control ordinance." (*Id.*, subd. (j)(11)(D).) Disputing the City's position that this definition refers to the amount authorized under the local ordinance at the time of the declaration of emergency, Western contends that it refers instead to the amount authorized under the local ordinance *at any given time*. Under Western's interpretation, mobilehome park owners may impose annual rent increases consistent with Santa Rosa's ordinance, without regard to the cumulative 10-percent cap in section 396, because at any given time they are charging a rental price authorized by the ordinance. In the alternative, Western contends that, once the state of emergency ended, owners were entitled to impose new rents calculated from a baseline that assumed the annual increases authorized by the local ordinance, but prohibited by section 396, had been imposed. We conclude the trial court properly rejected both arguments, although some of our reasoning is different.

## BACKGROUND

### I.

Subdivision (a) of section 396 reads: "The Legislature hereby finds that during a state of emergency or local emergency, including, but not limited to, an earthquake, flood, fire, riot, storm, drought, plant or animal infestation or disease, pandemic or epidemic disease outbreak, or other natural or manmade disaster, some merchants have taken unfair advantage of consumers by greatly increasing prices for essential consumer goods and services. While the pricing of consumer goods and services is generally best left to the marketplace under ordinary conditions, when a declared state of emergency or local emergency results in abnormal disruptions of the market, the public interest requires that excessive and unjustified increases in the

2

prices of essential consumer goods and services be prohibited.  It is the intent of the Legislature in enacting this act to protect citizens from excessive and unjustified increases in the prices charged during or shortly after a declared state of emergency or local emergency for goods and services that are vital and necessary for the health, safety, and welfare of consumers, whether those goods and services are offered or sold in person, in stores, or online.  Further, it is the intent of the Legislature that this section be liberally construed so that its beneficial purposes may be served."

Section 396, subdivision (e), provides in relevant part:  "Upon the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any city, county, or city and county, and for a period of 30 days following that proclamation or declaration, or any period the proclamation or declaration is extended by the applicable authority, it is unlawful for any person, business, or other entity, to increase the rental price, as defined in paragraph (11) of subdivision (j), advertised, offered, or charged for housing, to an existing or prospective tenant, by more than 10 percent. . . .  This subdivision does not authorize a landlord to charge a price greater than the amount authorized by a local rent control ordinance."

Section 396, subdivision (j)(11)(D), which provides the relevant definition of "rental price" for purposes of housing, reads:  "For mobilehome spaces rented to existing tenants at the time of the proclamation or declaration of emergency and subject to a local rent control ordinance, the amount authorized under the local rent control ordinance.  For new tenants who enter into a rental agreement for a mobilehome space that is subject to rent control but not rented at the time of the proclamation or declaration of

3

emergency, the amount of rent last charged for a space in the same mobilehome park.  For mobilehome spaces not subject to a local rent control ordinance and not rented at the time of the proclamation or declaration of emergency, the amount of rent last charged for the space."

Santa Rosa's rent control ordinance for mobilehomes is found in chapter 6-66 of title 6 of the City Code.  During the time that the state of emergency was in effect, section 6-66.040(A) (City Code section 6-66.040(A)) authorized rental increases on mobilehome spaces governed by the ordinance as follows:  "An owner, once in any 12-month period, may impose a rent increase for a mobilehome space by 100 percent of the percentage increase, if any, in the Consumer Price Index (CPI) during the most recent 12-month period ending in August; provided, however, the rental increase shall not exceed six percent of the previous rent charged for the space."

## II.

In October 2017, then-Governor Jerry Brown declared a state of emergency in Sonoma County due to wildfires.  Governor Brown's order triggered the price gouging protections under section 396.  Governor Brown, and then Governor Gavin Newsom, subsequently issued a series of executive orders extending the state of emergency and these protections through December 2021.

On August 13, 2020, while the state of emergency was still in effect, Rincon notified the City of its intent to implement an automatic annual rent increase on all of its spaces, effective November 2020, citing City Code section 6-66.040(A).  The Consumer Price Index annual percentage change for 2020 was 1.6 percent, so Rincon claimed an automatic rent increase of 1.6 percent.

On March 31, 2021, the City denied the annual rent increase requested by Rincon on the ground that the request would exceed 10 percent of the

4

rental price in effect at the time that the City began to operate under a state of emergency.  The letter reads, "The Santa Rosa City Code Chapter 6-66 Rent Control Mobilehomes, allows a rent increase based on changes in the **Consumer Price Index** (CPI), which is 1.6% for 2021.  However, when the City Code is layered with California Executive Order N-85-20, if the increase will result in the rent exceeding the cumulative 10% limit, it will be capped at 10%. [¶] **We have reviewed the request for an increase in rent** for **RINCON VALLEY MOBILE ESTATES.  Under these extended measures it has been determined that the rent increase will need to be assessed to not exceed the 10% from 2017 pre-disaster rate.  Based on the above, your 2021 increase cannot exceed the cumulative 10% cap**."  The letter further advises, "Please note the increase will not be allowed to be charged at a later date to make up for the rental cap."  Given the City's response, Rincon forwent implementation and collection of the intended rent increase.

### III.

Western sued.  The first cause of action sought a declaration that the city's ordinance "authorizes, without exception, an automatic annual rent increase on mobilehome spaces in the City that reflects the increase in the CPI" and that section 396, subdivision (e) does not suspend or otherwise affect the operation of the local ordinance during a state of emergency.  The second cause of action sought issuance of a writ of mandate directing the City to authorize the rent increases requested under the local ordinance.

Western moved for summary judgment, and the trial court denied the motion, concluding that Western was misinterpreting section 396.  The court explained:  "The dispute between the parties can be distilled to a single matter of statutory interpretation.  Plaintiffs contend that the language of

5

396 (j)(11)(D) creates a variable definition of 'rental price' based upon its plain language, and this Court has no discretion to make any determination except to enter summary judgment on this case. Defendants oppose this position, stating that the statute is ambiguous, and that proper construction of 396 (j)(11)(d) would result in a fixed 'rental price' during the emergency period. [¶] Plaintiffs' position fails for multiple reasons. First, Plaintiffs' construal results in the statute containing self-conflicting language, and therefore it clearly requires interpretation to be given effect. Plaintiffs' interpretation is outweighed by the plain language of the statute, specifically 396 (e). 'Upon the proclamation of a state of emergency . . . and for . . . any period the proclamation or declaration is extended by the applicable authority, it is unlawful for any person, business, or other entity, to increase the rental price, as defined in paragraph (11) of subdivision (j), advertised, offered, or charged for housing, to an existing or prospective tenant, by more than 10 percent.' . . . Based upon the plain language of 396 (e), it is clear that the restriction is based on the temporal event where the state of emergency is proclaimed. To undermine that with an interpretation of 'rental price' which is variable does not comport with the logic of the statute. [¶] Second, this ambiguity is substantially outweighed by the volume of other 'rental price' definitions within the statute. If Plaintiffs were correct in the interpretation of this section as creating a variable value upon which section []396 (e) applied, it would be unique as opposed to all other definitions of 'rental price' under 396 (j)(11)."

Western then filed a first amended complaint. It realleges the first cause of action without change. A new second cause of action seeks a declaration that if section 396 limits the operation of the local ordinance during a state of emergency, then once the state of emergency expires, park

6

owners "are entitled to fully recoup from park-space lessees all rental increases otherwise authorized" by the local ordinance but denied by the City based on section 396. The third cause of action again seeks issuance of a writ of mandate directing the City to authorize the rent increases requested under the local ordinance or, in the alternative, directing the City to permit Rincon to recoup from park-space lessees after expiration of the state of emergency all rent increases authorized under Santa Rosa's ordinance but denied under section 396.

The parties filed cross-motions for summary adjudication of the second cause of action. Western's motion clarified that, notwithstanding the complaint's use of the word "recoup," park owners like Rincon "do not seek payment of 'back rent' from lessees representing the amount of lost CPI-related rent suppressed by section 396's rent cap for four years. Rather, for each affected park space, they merely seek to use, *as the baseline for future increases starting in 2022*, the 2021 rent amount that incorporates the full CPI-related rent increase otherwise allowed for each of the years that the state of emergency was in effect."

The court granted the City's motion and denied Western's. It held that section 396 does not permit mobilehome park owners to incorporate (or "recoup") any rental increases that were otherwise allowed under Santa Rosa's rent control ordinance but prohibited by section 396. The court explained: "The policy and purpose of [] section 396 is, as set forth in its own language, solely and expressly to prevent businesses and landlords from taking advantage of emergency situations to impose 'excessive and unjustified increases in the prices of essential consumer goods and services.' It does add that these price increases are to be limited up through 30 days after the declared emergency ('the Emergency Period'), but that statement

7

only limits the period in which the increases are capped; it in no way states that the increases which could have taken place absent the limit but which were prohibited during the period in which the limit was in effect may be imposed after the end of the Emergency Period. It simply indicates that once the Emergency Period is over, then increases may once again be imposed without this restriction. It also states that these increases are to be limited in order to prevent those who would increase prices from imposing 'excessive and unjustified increases' and to prevent them from taking 'unfair advantage of consumers by greatly increasing prices for essential consumer goods and services.' It adds that 'the pricing of consumer goods and services is generally best left to the marketplace' but that in this instance it is going to cap what is allowed to lower than what the marketplace may arguably support. It also makes it clear that it is to be 'liberally construed' in order to give full effect to its policies." The court added, "allowing [park owners] to 'recoup' rent increases which they were not allowed to make under the language of the statute pending the Emergency Period would effectively negate the purpose of section 396 and in the end mean that the statute is ultimately meaningless. [Plaintiffs'] interpretation would simply delay the price gouging or 'excessive and unjustified' rent increases which section 396 states it was enacted to prevent because the consumers, in this case those renting mobilehome spaces, would not be protected from the rent increases at all, but merely be faced with having to pay them all at once. Simply delaying the price increases for a limited period of time and then allowing all the increases which might have built up to be imposed on the renters all at once is hardly meaningful protection and, by definition, is merely a delay, not a prevention. Moreover, the rent increases which section 396 by its language prevents by imposing caps are the 'excessive and unjustified' increases which would have

8

been imposed by taking advantage of suppose[d] market conditions during, and resulting from the emergency conditions, and section 396 expressly states that it was enacted to prevent such increases, not delay them."

In February 2024, after the parties had stipulated to the dismissal of the third cause of action, the City moved for summary judgment on the ground that the court's prior ruling on plaintiffs' motion for summary judgment insofar as it concerned the first cause of action necessarily decided the remaining legal question in its favor. The court agreed and entered judgment for the City.

## DISCUSSION

We review the trial court's summary adjudication and summary judgment orders de novo because the relevant facts are undisputed and the issues before us present questions of statutory interpretation. (*MacIsaac v. Waste Management Collection and Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081–1082.)

### I.

Under its first cause of action, Western argues that there is a category of mobilehome spaces unaffected by the 10-percent cap in section 396 because of the different ways "rental price" is defined. For some mobilehome spaces, the definition refers to a fixed time: For spaces not rented at the time of the declaration of emergency, the "rental price" for a new tenant is "the amount of rent *last charged*," either for the same space (in the absence of rent control) or for a space in the same mobilehome park (if rent-controlled). (§ 396, subd. (j)(11)(D), italics added.) But for a rent-controlled space that is already rented at the time of the declaration, the "rental price" is "the amount authorized under the local rent control ordinance"—meaning, as Western sees it, the amount authorized by the local ordinance *at any given time*, not at

9

the time the emergency was declared.  Under this definition so construed, the statute's 10-percent limit on rental increases is never triggered; so long as the increases comply with the local ordinance, they may continue apace notwithstanding the state of emergency because the only "rental price" tenants are ever asked to pay is one "authorized under the local rent control ordinance."

Our fundamental task in construing a statute " 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.]  We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.' " (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.) "[A]pparent 'ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally . . . .' " (*People v. Pennington* (2017) 3 Cal.5th 786, 795.)

The most obvious problem with Western's interpretation is that it conflicts with both the language and protective purpose of section 396, subdivision (e).  That subdivision makes it unlawful for any business or other entity "to increase the rental price, as defined in paragraph (11) of subdivision (j), . . . charged for housing[] to an existing . . . tenant[] by more than 10 percent" during a declared state of emergency.  Whether the tenant first occupied the space before the declaration of emergency or afterwards, at the time of the proposed increase the person is an "existing" tenant, and Western offers no explanation why, having used this language, the

10

Legislature would then define "rental price" to afford protection to one group of existing tenants but withhold it from another. Moreover, the Legislature's choice of the word "increase" in subdivision (e) becomes unintelligible if "rental price" is not treated as a fixed amount against which a new price can be measured. What Western posits is an intolerable inconsistency: The statute specifies that it prohibits increases to the rental price above 10 percent during the emergency to existing tenants but then defines "rental price" in such a way that the prohibition never comes into play for tenants who occupied the space when the emergency was declared.

"[T]he Legislature does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so." (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.) Here, the problem can be avoided by construing the phrase "the amount authorized under the local rent control ordinance" to refer to the amount authorized at the time the declaration of emergency took effect. While in the abstract this phrase could mean either "authorized at any given time" or "authorized at the time of the declaration of emergency," only the latter construction is reasonable in context and avoids nullifying the statute's protection. It makes sense because the definition applies to rent-controlled spaces that are "rented to existing tenants *at the time of the proclamation or declaration of emergency*" (§ 396, subd. (j)(11)(D), italics added) and the 10-percent limit applies for the duration of the emergency (*id.*, subd. (e)).

Western reads too much into the fact that subdivision (j)(11)(D) of section 396 uses a different definition of "rental price"—"the amount of rent last charged"—for a mobilehome space that was vacant when the emergency was declared. The evident reason for this difference is that there is no specific amount "authorized under the local rent control ordinance" for a

11

vacant space.  The need for a different definition in this context cannot reasonably be construed as a basis to infer that the Legislature intended to exempt all other existing tenants from the 10-percent limit on rental increases, contrary to the language in subdivision (e) and the purpose of the statute.  If that were the Legislature's intent, it could have expressly excluded that category of "existing" tenants from the statute's protection.  We are unpersuaded that it sought to achieve the same result through the opaque and roundabout method of furnishing a definition of "rental price" that ensures the statute's protection never comes into play.

Based on its contention that the definition in subdivision (j)(11)(D) of section 396 is "defined dynamically by whatever the local ordinance authorizes from time to time," Western argues that the City's reading renders the definition "surplusage" because "the 10% cap would control regardless of the local ordinance."  But Western cannot establish that its interpretation is correct by starting from the premise that its interpretation is correct and then arguing that the definition so interpreted would be rendered surplusage if not given effect.  Missing from the argument is any meaningful effort to grapple with the language and purpose of subdivision (e).

Western tries to find support for its interpretation in subdivision (k) of section 396, but that provision is another decisive consideration against it. Subdivision (k) states that section 396 "does not preempt any local ordinance prohibiting the same or similar conduct or imposing a more severe penalty for the same conduct prohibited by this section."  Western argues that Santa Rosa's rent control law is "indisputably a local ordinance that 'prohibits the same or similar conduct' as section 396 (e)—namely, 'excessive and unjustified increases' in rent.  *Id.* § 396 (a).  As such, [it] is *not* preempted by section 396 (e)'s rent cap, and, during a declared state of emergency

12

triggering that rent cap, the City's rent-control law continues to govern over already-rented spaces at mobilehome parks."

We do not accept the premise of the argument. The two measures do not prohibit "the same or similar conduct" because section 396 imposes special restrictions on rent increases during a state of emergency and Santa Rosa's rent control ordinance does not. Western argues that, where rent control exists, park owners have no ability to use a state of emergency as an opportunity to raise prices, so there is no additional need to protect renters from "excessive and unjustified increases" in that situation. (§ 396, subd. (a).) But "[a] general statement of statutory purpose does not override the substantive portion of a statute where, as here, that statutory language is clear and unambiguous." (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 622.) The Legislature expressly *did* impose the 10-percent limit on mobilehome spaces subject to rent control—both those already rented at the time of the declaration of emergency and those rented afterwards. The clear intent of subdivision (k) is to permit municipalities to impose *more* restrictive limits on price increases during an emergency, not less restrictive limits than the 10-percent cap in subdivision (e). Western's interpretation therefore contradicts this provision too.

## II.

Under its second cause of action, Western contends that, once the state of emergency expires, mobilehome park owners are entitled to "recoup" from lessees all rental increases otherwise authorized by the local ordinance but denied by the City based on section 396—"recoup" not by recovering "back rent" for the period covered by the emergency but by raising rents after January 1, 2022 from a baseline that assumes annual increases tied to the Consumer Price Index had been permitted in full during the emergency.

13

Western's opening brief offers two principal arguments. First, it argues that section 396 prohibited owners at most from *collecting* rent increases exceeding 10 percent cumulatively over the four years of the declared state of emergency, and that nothing in the statute prohibits them from calculating post-emergency rents in 2022 as Western proposes. Second, it argues that Santa Rosa's rent control ordinance recognizes that annual increases based on the Consumer Price Index are necessary to "insur[e] owners and/or operators and investors a fair and reasonable return" (City Code § 6-66.040(K)), and that to deny them the ability to set post-emergency rents as if those increases had been permitted would be unfair.

To the first argument, the City responds that there is no authority for the proposition that section 396 applies "only to suppress the *collection* of rents." In its view, because subdivision (e) makes it unlawful, without qualification, "to increase the rental price" more than 10 percent during the emergency, then for the purposes of the rent control ordinance, the post-emergency rates may be calculated based only on the rental amounts that were actually permitted to be charged during the emergency. To the second argument, the City replies that the rent control ordinance establishes a procedure for owners to seek approval for a rent increase on the ground that they have been denied "a fair return by the rent control provisions of this chapter" (City Code § 6-66.060), through which the relief Western seeks may be obtained. Outside of that procedure, the City maintains there is nothing in either the rent control ordinance or section 396 that would warrant the declaratory relief sought by the second cause of action.

The City notably has not reasserted on appeal the argument with which it prevailed in the trial court—that the relief Western seeks would "frustrate the stated purpose" of section 396 because it would allow "the cost

14

associated with a market disruption tied to a state of emergency [to] be passed onto the consumer." The court granted summary adjudication of the second cause of action because it agreed with the City that Western's interpretation "would simply delay the price gouging or 'excessive and unjustified' rent increases which section 396 states it was enacted to prevent . . . ." We accept the City's tacit abandonment of this argument. Section 396 limits a wide range of price increases during a state of emergency, but it imposes no restrictions after the emergency ends. Particularly when the statute has suppressed price increases for a long time, it is foreseeable that there could be a larger-than-usual rise once the restrictions are lifted. Section 396 does not address that issue. We cannot rely on the statute's general purpose to infer that consumers must receive protection against price increases imposed after the endpoint specified in its substantive provisions. (*Weiss v. City of Del Mar, supra*, 39 Cal.App.5th at p. 622.)

But the fact that section 396 itself does not prohibit the relief Western seeks does not mean that Western is entitled to it. The resolution of the issue ultimately depends on an interpretation of Santa Rosa's rent control ordinance, and Western has not persuaded us that anything in the ordinance compels judgment in its favor on the present record. Although Western notes that the ordinance refers to owners' right to a "fair return," it has not developed an argument that, under the terms of the ordinance itself, anything short of annual increases based on 100 percent of the percentage increase in the Consumer Price Index must be deemed to deny owners a fair return. Nor has it supplied evidence that owners of mobilehome spaces are denied a fair return unless they can increase post-emergency rents as Western proposes. Indeed, in its reply brief, Western appears to disavow reliance on the concept altogether, writing that park owners do have a right

15

to reset "artificially suppressed base rents following the end of an emergency . . . but not necessarily because [they] are entitled to a 'fair return' on [their] investment."

Western has also failed to present any argument that some other provision of the ordinance, or any other provision of law for that matter, affirmatively entitles it to the relief it seeks. Instead, it argues in the reply brief that owners are "permitted to reset rents as a matter of right because nothing in the City Code or section [396] precludes it." We disagree. Again, during the period the state of emergency was in effect, the ordinance authorized a rent increase equal to the percentage increase in the Consumer Price Index "during the most recent 12-month period ending in August . . . ." (City Code § 6-66.040(A).) In the second cause of action, Western sought a declaration that owners could instead impose a one-time increase that incorporated *all* annual increases in the Consumer Price Index over the multi-year period that the state of emergency was in effect. Calling it a "resetting" of the base rent, as Western prefers, does not negate its character as an increase for the tenant who pays it. And contrary to Western's argument, section 396 does not just prohibit the "collection" of rent in excess of the 10 percent limit; it makes it unlawful to increase the rental price "charged" for housing by more than 10 percent. (§ 396, subd. (e).) Measured against the baseline rent presently charged, the relief Western seeks would increase the rent in an amount precluded by the rent control ordinance.

As for the argument that the interaction of section 396 and Santa Rosa's rent control ordinance produces a result that is unfair to mobilehome park owners, Western has not explained how the trial court was empowered to act on it. Courts do not have a roving mandate to prevent allegedly unfair outcomes that do not violate the law. (See *Thornton v. California*

16

*Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1419 ["If Thornton believes the result is unfair, she must address her grievance to the Legislature, not to this court"].)  And Western has not shown that the result is so fundamentally unfair or so contrary to the purposes of Santa Rosa's rent control ordinance that it cannot have been intended by the law's drafters. (Cf. *Johnson v. Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 235, 242 ["The Legislature could not have intended such an inequitable result"]; *WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1035 ["Such a result would unfairly upset the balance sought by the enactment of this legislation, and cannot be a result that the Legislature intended"].)

Again, the City maintains that mobilehome park owners can address the claimed unfairness by seeking relief under the procedure in City Code section 6-66.060.  Western responds that, by its own terms, that procedure is available only when " 'the owner is denied a fair return *by the rent control provisions of this chapter*,' " and here owners are being denied the right to "reset[]" base rents by "the City's misinterpretation of section 396."  As discussed above, the rent control provisions restricting the size of an annual increase preclude the relief Western seeks because they are not written in a way that would enable an owner to avoid them by characterizing a portion of the increase as a "resetting" of the base rent to capture prior increases blocked in whole or in part by section 396.  We therefore accept the City's representation that section 6-66.060 provides a mechanism by which an owner could obtain the kind of increase Western seeks.  We do not imply that it is the only way to obtain such relief—we have no occasion to consider that question—but Western has not established that the trial court erred by

17

granting summary adjudication of the second cause of action in the City's favor here.

## DISPOSITION

The judgment is affirmed.  The City is entitled to recover its costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SWEET, J. *

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Sonoma County Superior Court |
| Trial Judge: | Honorable Bradford DeMeo |
| Counsel for Plaintiffs and Appellants: | Pierson Ferdinand, Paul J. Beard II |
| Counsel for Defendants and Respondents: | Teresa L. Stricker, City Attorney, Nathan L. Putney, Assistant City Attorney |